Fulton *vs.* Maccracken.

(Decided July 9th, 1862.)

## Lyman Fulton *vs.* Samuel F. Maccracken.

A protest should designate or identify the note to which it refers: this is usually done by putting on it a *copy* of the note, but if the original note be annexed, and referred to in the body of the protest, that is sufficient.

And where a protest appears without either the note or a copy, but there is endorsed on it a memorandum of the maker, amount, endorser, and date of protest, corresponding with the note in suit, this is sufficient to admit the protest in evidence.

It is no objection to a notice of protest that the notary's name was *printed* instead of signed: all that is required is, that the notarial certificate should appear to be the the *act* of the officer, and he may employ a clerk, or a *printing press*, to sign his name.

Where a witness, after testifying cautiously and hesitatingly, as to sending notices of protest, said, on cross-examination, he had *no doubt* he did mail the notices, but could not say he *distinctly remembered the precise fact*, his evidence may go to the jury.

It is the province of the jury to determine the weight and credibility of evidence, and to pass upon its sufficiency to prove the fact sought to be established.

Fulton *vs.* Maccracken.

Testimony of a lawyer, that he brought suit for a certain firm, recovered judgment, collected the money, and paid it over to a party, to whom one of the firm, *by letter* and assignment, directed him to pay it: is admissible, such facts are not *privileged communications* from his clients.

Where the defendant's liability depended on the existence of a partnership, and there was evidence on that subject proper for the jury, a prayer, denying the plaintiff's right to recover, based on the theory of *principal and agent* (of which there was also evidence) and ignoring the partnership, is erroneous.

A prayer, that if the jury find that the note sued on was discounted for the benefit "of the defendants *under the firm of Fulton & Linn,* and that they received the proceeds" thereof, does *not assume* the fact of partnership, but leaves to *the jury to find* the existence of the *firm,* which they could not do without finding a *partnership* existed.

Where a note was discounted for the benefit of the defendants, endorsers thereof, and they received the proceeds, and the plaintiff was the *immediate subsequent endorser,* and paid it, and took it up after protest, the plaintiff was an *accommodation* endorser for the *defendants,* and, as between them, no notice of dishonor to the defendants was necessary to entitle the plaintiff to recover.

APPEAL from the Superior Court of Baltimore City.

*Assumpsit,* brought August 27th, 1852, in the Circuit court for Baltimore county, and thence removed, on suggestion of the plaintiff, to the Superior court of Baltimore city for trial, by the appellee against the appellant and John M. Linn, partners trading as Fulton & Linn, endorsers of a promissory note. Linn was returned *non est,* and Fulton appeared and pleaded *non assumpsit,* and the case proceeded as against him.

Six exceptions were taken by the defendant to the rulings of the court below (LEE, J.) The facts of the case, as to the making, endorsement, discount and protest of the note, and the first and second exceptions, are fully stated in the opinion of this court.

*3rd Exception:* After the court had admitted the protest, and the form of a notice of it as stated in the preceding exceptions, the plaintiff gave some evidence of the existence of a partnership between Fulton and Linn, and how they conducted business, &c., and then offered the deposition of Giraud

67    v.18

Foster, the notary who protested the note in New York, in which, after stating the presentment, demand, refusal and protest of the note, on the 11th of October 1849, he says, that on the next day, he put in the post-office in New York, before the closing of the western mail, two notices of the protest of the note for non-payment, and that the holders looked to them for payment, addressed respectively to Sumner Clark, Fulton & Linn, and Samuel F. Maccracken, enclosed in a similar notice to W. Slade, Jr., cashier of the Hocking Valley Bank, Lancaster, Ohio, he being the last endorser, and Lancaster, Ohio, being his place of business, and he was the only endorser whose place of business or residence was known to witness, and that said notices were all sent in one enclosure. The defendant objected to so much of the deposition of this witness, as related to the protest or notices of protest, or the sending thereof in the manner stated, but the court admitted the same, and to this ruling the defendant excepted.

*4th Exception:* The plaintiff then offered in evidence the deposition of W. Slade, the cashier of the Hocking Valley Bank, in which he says, the note was discounted at his bank, and "I am quite confident it was discounted for the benefit of Fulton and Linn, whose names appear as endorsers thereon;— I think Mr. Linn presented it at the bank, and attended to the matter himself. I cannot positively state in what manner he received the proceeds, whether in currency or drafts on banks, but he received the proceeds in whatever shape paid. I am quite confident the note was not paid at maturity, and returned to the bank under protest from New York; my impression is, the notices of non-payment, sent by the notary, all came under envelope to me, and were by me, by next mail, forwarded to the endorsers;—my invariable custom was to forward notices to endorsers by the next mail which left Lancaster—I do not remember a single instance in which I failed. The notice to Fulton and Linn, in the present case was, I think, so sent, and my impression would be, was sent to Cincinnatti, where they resided or did business. I was always very careful to

leave nothing undone to fix the liability of endorsers. Some time after maturity the note was taken up by the plaintiff, whom I always regarded as accommodation endorser; I believe the note was discounted for the benefit of Fulton and Linn, and that they received the proceeds; that the plaintiff was mere accommodation endorser; that notice of non-payment was sent to Fulton and Linn, the next mail after it came to the bank, and that the plaintiff afterwards took up the note, that the plaintiff took up the note after his liability was fixed by notice of non-payment, which notice came in same envelope with other notices, and was, as I think, served on the plaintiff by myself—I was not intimately acquainted with him." In answer to a cross-interrogatory, whether he had any distinct and positive recollection that he mailed any notices of protest to the endorsers of said note, in the manner and at the time mentioned in his answers to the direct interrogatories? the witness stated, "that while he had no doubt that he did mail such notices, he could not say that he distinctly remembered the precise fact."

The defendant objected to the admissibility of so much of the deposition of this witness as contained statements of his impressions, or of his invariable custom, or of any matter of fact which he did not distinctly remember, but stated from impressions or customs only. The court admitted the whole, and to this ruling the defendant excepted.

*5th Exception:* The plaintiff then, after other evidence, offered the deposition of Richard M. Corwine, Esq., a lawyer of Cincinnatti, residing there in 1849, and of the law firm of Spencer and Corwine, who stated that he had acted as attorney for Lynn, and had brought a suit for *Fulton and Linn, use of Fulton, vs. J. R. Betts, et al.*, in the District Court of Ohio, for Hamilton county; that his law firm received one letter from Fulton on that subject; that the claim was assigned to Maccracken, but witness does not know how and when it was assigned; that the suit has been finally decided, the money collected and paid over to the proper party, in accordance with

the assignment of Fulton to Maccracken; that the assignment purported to come from Fulton, and came to witness' firm in such a way as left no room to doubt it did come from him; his impression was, his firm was notified of it by V. Worthington, who, as witness understood, represented Fulton in some way in his matters in Cincinnatti, but he is sure his firm were notified of the assignment in a letter which they received from Baltimore, purporting to come from Fulton, and the assignment contracted for the payment of the money.

The defendant objected to the admissibility of the whole deposition of this witness, he being the attorney for the defendant, but the court admitted it, and to this ruling the defendant excepted.

*6th Exception:* The plaintiff then asked two instructions to the jury:—

1st. That if they believe from the evidence in the cause, that the note of Wm. Bradley for $2000, given in evidence, was discounted for the use and benefit of the defendants under the firm name of Fulton and Linn, and that they received the proceeds of it, and that the plaintiff was the immediate subsequent endorser thereon, and has paid the same, and is now the owner thereof, that then the plaintiff is an accommodation endorser upon said note for the benefit of the defendants, and is entitled to recover in this action without proving that notice of the dishonor of said note was given to the defendants.

2nd. That if they shall find from the evidence in the cause, that the plaintiff was an accommodation endorser for benefit of defendants, upon the note given in evidence, and that the defendants received the proceeds of the same and were immediate prior endorsers thereon, then the plaintiff is entitled to recover in this action without proving that notice of protest of said note was given to the defendants, if they shall find that the plaintiff has paid said note and is now the holder thereof.

The defendant then offered *five* prayers, all of which but the *fifth* are sufficiently stated in the opinion of this court. The *fifth* prayer is in substance as follows:—

5th. That if the jury find, that in the year 1849, the defendant resided in or near Baltimore, and Linn resided in or near Cincinnatti, and that defendant sent $8,000 or $10,000 to Linn, to be used by him in buying notes or discounting paper, but that it was not the intention of the defendant to form any general co-partnership with Linn, either for the purpose of buying notes or discounting paper, or for any other purpose, and that he never authorised Linn to establish a firm at Cincinnatti, consisting of defendant and Linn, under the name of Fulton & Linn, and never authorized Linn to sign or endorse the name of Fulton & Linn on any paper, or to obtain loans or discounts on the credit of the defendant; and if they further find, that defendant did not know that Linn had made use of the name of the firm of Fulton & Linn in the establishment of a business in Cincinnatti, and in obtaining discounts of paper until his arrival in Cincinnatti, as stated by the witness Halloman, and until after the note, on which this suit is brought, had been discounted by the Hocking Valley Bank, as stated by the witness Slade, (if the jury shall find that such discount was made, as stated by the witness Slade, and also the facts as stated by said Halloman;) and if they further find, that the defendant, on being informed that such a firm had been established, objected thereto, and denied the existence thereof, and that the defendant received no part of the money obtained by the discount of the note, on which this suit is brought, and derived no benefit therefrom, then the plaintiff is not entitled to recover.

The court granted the plaintiff's prayers and rejected those of the defendant as presented, but granted the fifth with this modification: "Unless the jury shall find, from all the evidence in the cause, that Fulton and Linn were jointly interested in the business of selling, buying and discounting paper, and that the plaintiff had no knowledge, when he endorsed for Fulton and Linn, that any agreement or limit had been fixed, by said Fulton, upon the authority of said Linn, in relation to the negotiation of paper."

The defendant excepted to the granting of the plaintiff's

prayers, the rejection of his own, the modification of his fifth prayer, and the granting of the same as modified, and the verdict and judgment being against him, appealed.

The cause was argued before BOWIE, C. J., BARTOL, GOLDSBOROUGH and COCHRAN, J.

*Edw. O. Hinkley* and *F. W. Brune,* for the appellant :

1st. The admission of the protest was error, because it contains no copy of the note protested, for verification or identification, but only refers to a note annexed, and so anybody might annex any other note, and thus it leaves room for fraud. *Byles on Bills,* 191. *Chitty on Bills,* 458, 462.

2nd. The admission of the notice of protest was error, because the signature of the notary to it is *printed,* and not subscribed in writing. The giving of notice must be the notary's own act, and must be evidenced by his signature in his own handwriting, so that if necessary, it could be identified as his handwriting and signature, otherwise great frauds might be perpetrated, no opportunity being afforded for their correction. *Edwards on Bills,* 466, 629.

3rd. The admission of the deposition of the notary was error, because he does not appear to have given any copies of the notices of protest sent, and they ought to accompany the deposition in order that it may be known precisely what he did send. But supposing the printed form of protest before referred to, is what he sent, it is not sufficient, because the signature is in *print* as before mentioned, and because he sent *two* notices to *three* persons, and it does not appear how he directed the envelope. Surely this uncertainty is not sufficient evidence of notice to bind an endorser.

4th. The admission of Slade's deposition about *his impressions,* with reference to having given notices of protest, was error. He says, *"My impression* is;"—"My invariable custom was;"—"I *do not remember* a single instance in which I failed;"—"The notice was, *I thought,* so sent;"—"*My im-*

*pression* would be to Cincinnatti;"—"I was always very careful to leave nothing undone," &c., and when asked on cross-examination whether he had any *distinct* and *positive recollection*, that he mailed *any notices* in the manner he had mentioned? he said that, "while he had no doubt that he did mail such notices, *he could not say that he distinctly remembers the precise fact*." Such vague indefinite impressions without any distinct remembrance about the matter, are not sufficient evidence to bind an endorser. 3 *G. & J.,* 474, *Flack vs. Green.* 8 *G. & J.,* 421, *Pocock vs. Hendricks.*

5th. The admission of Corwine's deposition was error. He speaks of a letter and an assignment, but does not produce either. Again, it was the privilege of the defendant to refuse to allow his attorney to testify against him with regard to the conduct of his suit. 2 *Md. Ch. Dec.,* 231, *Chew vs. Farmers Bank.*

6th. The plaintiff's first prayer is erroneous, because it instructs the jury upon certain *insufficient facts* therein stated, that the plaintiff is by law an accommodation endorser for the benefit of the defendant, and entitled to recover without notice of dishonor to the defendant. The second prayer submits, as a question of fact to the jury to find, that the plaintiff is an accommodation endorser, and then dispenses with notice to the defendant as in the first prayer, and besides, it assumes that the plaintiff had a right to *volunteer* to pay the note without a protest of it or any notice given to him to fix his liability, and then hold the defendant. Both prayers are moreover defective in *omitting* the finding by the jury of the several endorsements including that of the defendant, and in *assuming* the existence of a partnership, in relation to which there was conflicting evidence, and calculated to mislead the jury by leaving them to find, that both defendants received the money on discounting the note, when the evidence, is positive, that Linn alone received it, and his acts, without a partnership, would not bind both. 10 *Md. Rep.,* 122, *Boyd vs. McCann.*

7th. The rejection of the defendant's *first, second* and *third*

prayers, was error. The liability of the defendant without notice, could only be on the ground, that he was not damnified by want of it: but here he plainly is, because if he did not get notice, his prior endorser might not, and so he might lose his remedy as against him, for it is to be noticed that the defendant was the second endorser and the plaintiff the third, and there was a first endorser, who would have been liable to the defendant, if he had been duly notified. Besides, without due notice to the defendant, his remedy over against the maker might have been impaired. The reason of the rule dispensing with notice in other cases being wanting in this instance, the rule itself must cease. Besides, as to the third prayer, if the plaintiff, himself, was discharged, for want of notice, he cannot volunteer to pay the bill and charge the defendant. *Byles on Bills,* 213, 218, 221. *Chitty on Bills,* 433 to 440. *Story on Prom. Notes, secs.* 268, 269. *Edwards on Bills,* 452 to 464. *Bayley on Bills,* 294. *Ross on Com. Law,* 536. *Peake,* 202, *Wilks vs. Jacks.* 15 *East.,* 216, *Brown vs. Maffey.* 3 *Barn. & Ald.,* 619, *Cory vs. Scott.* 8 *Barn. & Cress.,* 610, *Norton vs. Pickering.* 16 *Mees. & Wels.,* 743, *Carter vs. Flower.* 4 *Cranch.,* 141, *French vs. Bank of Columbia.* 10 *Pet.,* 578, *Dickens vs. Beal.* 2 *How.,* 66, *Burke vs. McKay.* 20 *How.,* 443, *Brown vs. Wiley.* 7 *H. & J.,* 381, *Eichelberger vs. Finley.* 9 *Gill,* 360, *Orear vs. McDonald.* 2 *Md. Rep.,* 363, *Renwick vs. Williams.* 3 *Md. Rep.,* 210, *Boehme vs. Carr.* 5 *Md. Rep.,* 400, *Yates vs. Donaldson.* 10 *Conn.,* 308, *Holland vs. Turner.* 7 *Mass.,* 449, *Warder vs. Tucker.* 11 *Johns.,* 180, *Agan vs. McManus.* 5 *Ala.,* 683, *Sherrod vs. Rhodes.*

8th. There is error in the modification to the *fifth* prayer, because it is repugnant to, and entirely inconsistent with, the first part of the prayer, and the whole instruction, as it stands, assumes facts, and is improper in view of the evidence. 13 *Md Rep.,* 241, *Andre vs. Bodman.* 7 *G. & J.,* 24, *Cole vs. Hebb.* 1 *Gill,* 144, *Whiteford vs. Burckmyer & Adams.* 4 *Md. Rep.,* 269, *Day, et al., vs. Day.* 6 *Md. Rep.,* 19, *At-*

*well vs. Miller, et al.    Ibid.,* 151, *Key vs. Dent.    7 Md. Rep.,* 101, *Union Bank vs. Kerr.*   Agreement for a share of the profits does not make partners, even as against third persons, if there was no act holding himself out to the public, on the part of the person to be charged.  1 *Foster,* 93, *Newman vs. Bean.* 6 *Ala.,* 215, *Hodges vs. Dawes.    6 Met.,* 82, *Denny vs. Cabot.*  1 *Penn. State Rep.,* 255, *Dunham vs. Rogers.    1 Denio,* 337, *Burckle vs. Eckart.    2 Md. Rep.,* 38, *Bull vs. Schuberth.*

*W. M. L. Marshall* and *J. Dean Smith,* for the appellee:

1st.  The production of the protest, duly made by the notary is *prima facie* evidence, to prove the fact of the presentment and non-payment of the note, the proof of which, in the present case, was the sole purpose of its production.   The endorsement on the protest sufficiently shows, that the note to which the protest refers, was the note sued on.   Act of 1837, ch. 253.  2 *Pet.,* 179, *Townsley vs. Sumrall.    4 Gill,* 201, *Barry vs. Crowley.*

2nd.  The printed signature of the notary to the notice of protest, is a sufficient signing, and equivalent to a written signature.   *Byles on Bills,* 315.   17 *Md. Rep.,* 159, *Munroe vs. Woodruff & Robinson.    2 Bos. & Pull,* 238, *Saunderson vs. Jackson.    2 Maule & Selw.,* 286, *Schneider vs. Norris.*

3rd.  The notary is a proper witness to prove the sending of the notice, and his statement of the form of the notice sent, as to its competency, is governed by the same rules as would be applicable to the notice itself, were it produced.   There can be no well founded objection to his evidence.  2 *Pet.,* 179. 10 *Pet.,* 572, *Dickens vs. Beal.    2 Doug., ( Mich. Rep.,)* 428, *Spies vs. Newberry.*

4th.  The testimony of Slade is sufficiently precise as to the *time* when he sent, and that he did send the notices to the prior endorsers, to be evidence legally competent to be submitted to the jury.   The credibility of this testimony, as well as its sufficiency to prove the fact, that the notices were sent at

that time, is a question for the jury to determine. 1 *Greenlf's Ev.*, sec. 4. 2 *Pet.*, 44, *Columbian Ins. Co., vs. Lawrence.* 7 *Gill*, 223, *Bell vs. Hagerstown Bank.*

5th. Corwine was a competent witness to testify to the statements of the defendants, as to the existence of their firm. These statements were not made to him under privilege of professional confidence. 7 *Martin N. S., (La. Rep.,)* 177, *Cormier vs. Richard.* 3 *Mylne & Craig*, 521, *Desborough vs. Rawlins.* 2 *Barn. & Cress.*, 748, *Bramwell vs. Lucas.*

6th. *As to the prayers on both sides*, it is contended:—

1st. That the word *"firm,"* in mercantile law, signifies *"partnership,"* and the words of the plaintiff's *first* prayer, "that if the jury believe from the evidence in the cause that the note given in evidence, was discounted for the use and benefit of the defendants, under the *firm* name of Fulton and Linn, and that *they* received the proceeds," &c., are of the same effect, as if the court had told the jury that if they believe from the evidence, that the note was discounted for the use and benefit of the defendants *as partners*, &c. In each case the question of partnership is brought out for the consideration of the jury, upon the evidence. 1 *Bouv. Law Dic.—Firm.* *Story on Part.*, secs. 150, 299, 300. 1 *Greenl. Ev.*, secs. 22, 527 *a*. 5 *Shepley*, 235, *Ellis vs. Jameson.*

2nd. The court properly instructed the jury in the same prayer, to find the plaintiff an accommodation endorser, provided they found from the evidence, that, as immediate prior endorsers, the defendants received the amount of the note by discounting it at the bank, after they had obtained the plaintiff's endorsement upon it. 9 *Barn. & Cress.*, 44, *Sharp vs. Bailey.* 1 *Ala.*, 565, *Wallace vs. Branch Bank.* 2 *Ala.*, 502, *Mauldin vs. Branch Bank.*

3rd. The court also properly instructed the jury in the plaintiff's second prayer, that notice was unnecessary to be proved in this case, provided they found the plaintiff to be an accommodation endorser on the note, for the benefit of the defendants:—1st. Because a waiver of notice is implied by law be-

Fulton *vs.* Maccracken.

tween them, the defendants being primarily liable. *Chitty on Cont.*, 443. *Bailey on Bills*, 100. *Story on Bills*, sec. 310. 12 *Mees. & Wels.*, 706, *King vs. Phillips*. 7 *Bing*, 217, *Bagnall vs. Andrews*. 2nd. And they being ultimately, and at all events, bound to pay, notice would be superfluous, they receiving no injury as to the accommodation endorser, from his alleged neglect to send the notice. 4 *Taunt.*, 732, *Leach vs. Hewitt*. 4 *Taunt.*, 464, *Jones vs. Brooke*. *Parson's Mer. Law*, 93. 11 *Johns.*, 180, *Agan vs. McManus*. 7 *Wend.*, 168, *Mechanics Bank vs. Griswold*. 1 *Term Rep.*, 405, *Bickerdike vs. Bollman*. 18 *Johns.*, 327, *Stafford vs. Yates*. 5 *Cowen*, 309, *Mead vs. Engs*. 3rd. Because the accommodation endorser is surety for the party accommodated. 3 *Barb.*, 634, *Baker vs. Martin*. 16 *Johns.*, 70, *Hubbly vs. Brown*.

4th. From the propositions above laid down, the court properly rejected the first and second prayers of the defendants. As to their third prayer, the appellee insists, that the design of notice of protest is not retrospective, but has relation to prior parties merely, and thus cannot be frustrated, because notice has not been sent to a subsequent endorser, that the rule of notice is not absolute—it may be waived; but the waiver is a voluntary relinquishment of one's right of notice, as to *subsequent* endorsers only; *ex vi termini*, it cannot include prior endorsers, unless the design of notice is frustrated as to them by the waiver. Finally the law will *presume* payment to be made in conformity to its rules, unless otherwise proved, the *onus* of proof being on the party denying it. 5 *Cowen*, 309. 3 *East.*, 193, *Williams vs. East India Co*. 7 *Wend.*, 198, *Garlock vs. Geortner*.

5th. The court also properly rejected all the defendant's prayers, for the reason that, they are erroneous in asking instructions of the court as to the *sufficiency* of the evidence, which is a question for the jury themselves to determine, and not for the court. 1 *Greenl. Ev.*, sec. 4. 2 *Pet.*, 148, *Van Ness vs. Pacard*.

BARTOL, J., delivered the opinion of this court.

This is an action on a promissory note brought by the appellee against the appellant, and one John M. Linn, as partners, constituting the firm of Fulton & Linn. Linn being returned *non est*, the cause proceeded against the appellant, and this appeal is taken from the judgment rendered against him. In the progress of the trial six bills of exception were taken.

The note sued on was for $2000, dated Cincinnatti, July 10th, 1849, made by William Bradley, at ninety days, payable to the order of Sumner Clark, at the office of the Ohio Life and Trust Company, New York; Sumner Clark endorsed the note to Fulton & Linn, who endorsed it, procured the endorsement of the appellee, Maccracken, thereon, for their accommodation, and obtained a discount of the note for their use, at the "Hocking Valley Bank, of Lancaster, Ohio," of which bank William Slade, Jr., was cashier. Slade specially endorsed the note as follows: "Pay to J. Punnett, Cashier, or order.— *Wm. Slade, Jr.*, Cashier."

The note was duly presented and dishonored, and being returned to the Hocking Valley Bank, was paid by the plaintiff.

To prove the partnership, the appellee offered, at the trial, a record of a suit brought at Cincinnatti, June 1849, by Lyman Fulton and John M. Linn, as partners, under the *firm* name of Fulton & Linn, against John R. Betts and others; which evidence was admitted by the court without objection on the part of the appellant. To prove the presentment and non-payment of the note, he offered the protest made by the notary public, to the admission of which, in evidence, the appellant took his first bill of exceptions.

The protest is in the usual form, stating that "the original promissory note hereto annexed" was presented to one of the clerk's in the office of the Ohio Life and Trust Co., in the city of New York, and payment thereof demanded of him, which he refused, saying, "No funds." The only objection made to the protest is, that "it contains no copy of the note presented for verification or identification, but only refers to a note annexed."

The Act of 1837, ch. 253, makes the protest of a notary public, duly made, *prima facie* evidence of the facts stated in it. It is necessary that it should designate or identify the note to which it refers; this is usually done by putting on it a copy of the note. But if the original note itself be annexed, as was probably done in this instance, and be referred to in the body of the protest, that would be sufficient. As it appears, however, in the bill of exceptions, the protest is without the note or a copy of it. But on the back is this endorsement: "Wm. Bradley—note, dolls. 2000—for W. Slade, Jr., Cash'r. Protested Oct. 11th, 1849.—*J. P. Giraud Foster,* Notary Public and Attorney at Law."

In our opinion this endorsement is a sufficient memorandum to show, that the protest referred to the note sued on, and therefore that the protest was properly admitted as evidence, under the Act of Assembly.

The second exception is to the admission in evidence of the notice of protest, given by the notary. No objection is made to the form or contents of the notice, but it is contended the name of the notary ought to have been signed by himself, in his own handwriting, instead of being printed. In our opinion, this exception is not well taken; all that is required is, that the notarial certificate should appear to be the act of the officer. In *Monroe vs. Woodruff & Robinson,* 17 *Md. Rep.,* 159, we decided that such official acts may be performed by a clerk employed by the notary; his name need not be signed by his own hand; it is sufficient that it be affixed by his authority or direction; he may employ the hand of a clerk for that purpose, or a printing press.

The third exception was taken to the admission of the depositions of Giraud Foster, the notary, with reference to the sending of notices of protest. In the argument of the cause in this court, we did not understand the appellant's counsel as insisting upon this exception, and we think there was no error in admitting the evidence. The fact that the notary's name was affixed in print, as we have before said, is no valid objection,

nor do we consider any of the other other objections made by the appellant to this evidence, as valid or supported by authority.

The fourth exception presents for our consideration the testimony of the cashier, William Slade, Jr., which, it is contended, was improperly admitted, because it is alleged to be mere vague and indefinite impressions of the witness, without any distinct knowledge or recollection of the facts about which he testified. This exception was very earnestly and ably pressed by the appellant's counsel in the argument. But after the best consideration we have been able to give the subject, and to the authorities adduced, we are of opinion the testimony was properly admitted. It is impossible to read the witness' testimony without being struck with his cautious and hesitating manner of stating his recollection and belief. Taking the whole together, however, we think it was sufficiently definite to be submitted to the jury. The main fact which the witness was called to prove was, the sending of notices of protest to the several endorsers of the note. He states, "that the plaintiff took up the note after his liability was fixed by notice of non-payment, which notice came in same envelope with other notices, and was, as witness thinks, served on the plaintiff by himself."

In answer to the cross-interrogatory by defendant, "Whether the witness had any distinct and positive recollection that he mailed any notices of protest to the endorsers of said note, in the manner and at the time mentioned in his answers, to the direct interrogatories contained in this deposition?" the witness stated "that while he had no doubt that he did mail such notices, he could not say that he distinctly remembered the precise fact." This was competent evidence to be submitted to the jury, whose province it was to determine its weight and credibility, and to pass upon its sufficiency to prove the fact sought to be established.

We find no error in the ruling below on the fifth exception. The facts testified to by the witness were not in any sense

privileged communications from his clients. No rule is better established than "that communications which a client makes to his legal adviser for the purpose of professional advice or aid shall not be disclosed, unless by the consent of the client for whose protection the rule was establised." But as we have said this case does not come within that rule; the facts testified to by Mr. Corwine, were not derived by him from his clients, under the seal and protection of professional confidence.

The sixth exception brings before us the prayers of which the plaintiff below offered two that were granted, and the defendant five, all of which were refused except the fifth, which was granted with a modification. We shall first examine the prayers offered by the defendant:—

The first is, that there was no sufficient evidence of notice of non-payment, given to all the endorsers of the note.

The second, that there was not sufficient evidence of such notice to the defendant.

The third, that there was not sufficient evidence of such notice to the plaintiff.

These prayers were properly refused. Even if such notice was necessary to entitle the plaintiff to recover in this case, it may be found in the testimony of the notary and of the cashier, sufficient to be submitted to the jury.

The fourth prayer relates to the notary's name being printed, instead of being written by his own hand, and is presented by the second exception; it was also properly refused.

The fifth prayer, as offered, could not properly be granted, because it ignored entirely the existence of any partnership between the appellant and Linn, of which there was evidence in the cause proper to be submitted to the jury, and was based upon the theory, that the relation between them was merely that of principal and agent, which although the jury might find, it was not competent for the court to assume. We think the objections to the court's modification of the fifth prayer are not well founded; it placed the case of the defendant before the

jury, on the questions of agency and of partnership, on as favorable ground as the law entitled him to. In the argument of the cause the appellant has contended, that the plaintiff's prayers were defective in form, and erroneous in substance. The formal objection is supposed to consist in the assumption by the court of the fact of partnership between Fulton and Linn, and of the endorsement of the note by them, which ought to have been submitted to the jury. The prayers are not very artistically drawn, but as we construe them, those questions of fact were left to the jury. In the first prayer, the jury are left to find that the note was "discounted for the use and benefit of the defendants under the firm name of Fulton and Linn, and that they received the proceeds of said note." This we think is not an assumption by the court of the existence of the firm; it left to the jury to find the existence of the firm, which they could not do without finding that a partnership existed.

The first prayer says nothing about the endorsement by Fulton and Linn. But that fact was in no wise material to the proposition contained in the prayer, which was, that the legal result from the facts stated, was that, as between the parties to the suit, the plaintiff was an accommodation endorser, and if so, notice of dishonor to the defendants was unnecessary. We think that the formal objections to the second prayer were also untenable. And from an examination of the authorities cited on both sides, we are of opinion, that the legal propositions contained in both prayers, are sound. The facts stated in the first prayer, if found by the jury, would constitute the plaintiff, as between him and Fulton and Linn, an accommodation endorser, and if so found, then, as between them, Fulton and Linn, would be primarily liable on the note, and no notice to them of the dishonor of the note would be necessary to entitle the plaintiff to recover in this suit. What might be the effect of a want of such notice to the prior endorsers, it is not necessary to say, because that question is not involved in these prayers.

We affirm the rulings of the Superior court in all the exceptions, and affirm the judgment.

Judgment affirmed.

(Decided July 9th, 1862.)