FREDERICK A. BRIGHAM, APPELLEE, v. PETER A. McDOWELL, GEORGE C. NEWMAN, TRUSTEE, THOS. RYAN, JOHN S. GREGORY, AND E. MARY GREGORY, APPELLANTS.

1. **Estoppel:** JUDGMENT: RES ADJUDICATA. In order to constitute a former adjudication which can be pleaded in bar of a recovery, the judgment pleaded must be in an action between the same parties, or their privies, and upon the same subject-matter as the cause in which the defense is presented.

2. **Attorney and Client:** PRIVILEGED COMMUNICATIONS: EVIDENCE. Where an attorney is employed to prosecute an action to foreclose a mortgage, and before the final foreclosure is consummated, and during the litigation, the plaintiff denies the authority of his attorney to prosecute a collateral action which, if prosecuted, would work an estoppel on plaintiff; and where in a subsequent action in which the question of the authority of the attorney to act becomes important, for the purpose of determining the rights of parties affected by the first decree, it is not a violation of the law of privileged communications to allow the attorney to testify as to his employment, and as to the instructions given him by his client, or as to his approval of the course pursued by the attorney. Especially is this the case where the relation of attorney and client has ceased and the authority of the attorney is called in question by the client, and in a case where equities of third parties are to be settled without detriment to the rights of the client.

3.  Mortgage: FORECLOSURE: NEW MORTGAGE: PRIORITY OF
    LIENS.  A executed a mortgage to B on certain lands to secure
    the payment of a sum of money.  Afterwards, and during the
    existence of the lien created by the mortgage, A, upon the con-
    ditional consent of B (the condition being that the new security
    should be of equal value with the old), exchanged part of the
    real estate mortgaged for other real estate of less value, receiv-
    ing the difference in cash, and executed a new mortgage on the
    property received by him in exchange for that previously mort-
    gaged, receiving a release, which he failed to have recorded, and
    conveying the land described in the first mortgage to the pur-
    chaser.  B was a non-resident.  The mortgage was placed in
    the hands of attorneys for foreclosure who had no knowledge of
    the execution of the second mortgage, nor of the release of the
    part of the property described in the first mortgage.  They ob-
    tained a decree of foreclosure against the property described in
    the first mortgage.  Service of summons upon the owner of the
    property released was had by publication.  By mistake of the
    attorneys this released property was not described in the pub-
    lished notice.  After the decree had been rendered the attorneys
    brought suit to correct the decree and modify it so as to omit
    the released premises and include that described in A's second
    mortgage.  In this proceeding the purchaser from A made a
    general appearance.  The decree was modified as prayed.  A
    appealed to the supreme court, where the action was dismissed
    on the motion of B, as having been instituted and carried on
    without his authority.  B had knowledge of the existence of
    the second action, and did not disaffirm until informed of all
    the facts.  While this second suit was pending B's attorneys
    purchased of A's grantee the property released from the first
    mortgage at about one-eighth of its value, and had the deed
    made to another in trust for them.  Soon afterwards they sold
    the land for its value and retained the proceeds, the purchaser
    having constructive knowledge of all the proceedings.  In an
    action by this purchaser to enjoin the sale of the land under the
    decree, and for the purpose of having the real estate of A in-
    cluded in the second mortgage sold first, it was *Held*, That as
    between such purchaser and A he was entitled to have the
    property conveyed by A's second mortgage sold first, but that
    after such sale, if any deficiency existed, the land purchased by
    him should be sold to satisfy the same.

APPEAL from the district court of Lancaster county.
Heard below before POUND and MITCHELL, JJ.

*Brown & Ryan Brothers*, for appellant McDowell, cited: *People v. Atkinson*, 40 Cal., 285. *Dedric v. Hopson*, 62 Iowa, 562. *Bacon v. Frisbie*, 80 N. Y., 401. *Chirac v. Reinicker*, 11 Wheat., 280. *Case v. Carroll*, 35 N. Y., 385. *Henry v. Raiman*, 25 Penn. St., 354. *Hatch v. Fogerty*, 40 How. Pr., 492.

*John S. Gregory, pro se*, and for E. Mary Gregory, appellant.

*J. R. Webster*, for appellee, cited: *Cheney v. Cooper*, 14 Neb., 418. Week's Attorneys, § 177. *Rochester Bank v. Suydam*, 5 How. Pr., 254. *Mitchell v. Bromberger*, 2 Nev., 345.

REESE, J.

This is an appeal from a decree of the district court of Lancaster county. The cause was referred to a referee, who heard the evidence and reported his findings of fact and conclusions of law, and which report was confirmed and decree entered in accordance therewith over the exceptions and objections of defendants. The record is unusually voluminous, and the report of the referee is of great length, and we shall be content with a brief statement of the case without quoting at length from either.

The briefs and arguments at the bar of this court abound with charges and counter-charges of dishonesty and bad faith on the part of counsel and litigants; and, while there is much in the case from its inception which savors of a want of good faith and common honesty, we shall neither deem it a duty nor a privilege to apologize for, explain away, condemn, or criticise the conduct of any one involved in this case, but seek to dispose of the cause, as it seems to demand, in a rather summary way, and thus, if possible, terminate its long and expensive career.

In 1875 defendants John S. and E. Mary Gregory executed to defendant McDowell their note for the sum of $1,000, and to secure its payment made a trust deed or mortgage to defendant Newman. This mortgage covered the south-west quarter of section 20, in township 12 north, of range 6, and the east half of the south-east quarter of section 27, in township 10 north, of range six. About one year thereafter Gregory negotiated an exchange of property with one Powell, by which he was to receive from Powell lot 7 in block 122 in the city of Lincoln, and for which he was to give the eighty acre tract in section 27, and which was included in the McDowell mortgage. McDowell was a non-resident, residing in New York, and his business was transacted here by Hartley, Newman, and Leonard, who were connected with the Lancaster County Bank, in Lincoln. It further appears that the land was considered worth $800 more than the town property. Such representations were made to McDowell as to the benefits to be derived from an exchange of securities as induced him to consent, conditionally, to the exchange. This condition was that the title to the new security should be good, and the value equal to the old. The exchange was made, but the $800 received was not accounted for, McDowell receiving no part of it. The new mortgage was sent to McDowell, and the time of payment by his consent extended for one year. Gregory, by this deal, received the $800 and the city property for the eighty acres, the land in dispute here. He failed to record the release of the mortgage and also failed to pay his note. The mortgage was placed in the hands of Lamb, Billingsley & Lambertson for foreclosure. Lambertson appears to have had little, if anything, to do personally with the matter. The suit was instituted, but for the foreclosure of the original mortgage. The attorneys claim they had no knowledge of the exchange of securities, and it seems that the mortgage on the city property was not placed in their hands. Powell was made

a party to the action. Being a non-resident, service of summons was made by publication. No mention was made of the eighty acre tract either in the affidavit for publication or in the notice as published. The 160 acres in section twenty was described in both, and referred to as the property described in the mortgage. During the pendency of this suit, with the consent of McDowell, it was stipulated that a decree should be entered as prayed, that no stay of proceedings should be had by Gregory, that no attorney's fees should be taxed in the costs, an order of sale should be issued and the land sold, but no judgment for any deficiency should be entered against Gregory. The decree was entered, and in due time the order of sale was issued and the land in question here was advertised for sale. The attorneys having the matter in charge ordered a return of the order of sale. An action was afterwards commenced, the purpose of which was to correct the former decree so as to relieve the eighty acres from its effects and in its stead include the city property described in the second mortgage. This suit was commenced in September, 1878. In December, 1879, and while this suit was pending, Lamb and Billingsley, who were still the attorneys for plaintiff, and J. H. McMurtry purchased the eighty acres for the sum of $250, and caused it to be conveyed to Harry E. Wells, who held it in trust for them. At this time Lamb, Billingsley, and McMurtry all knew that McDowell claimed an interest in the land and insisted that the conditions imposed had not been complied with and that he had never released it from the mortgage. On the 10th day of February, 1880, and while said suit to correct the decree was still pending, Wells conveyed the land to E. S. Hume, a sister of Billingsley, and she received and held the title in the same capacity in which Wells had held it—as trustee for Lamb, Billingsley, and McMurtry. A decree was finally entered correcting the former deed as prayed. Powell appeared in this cause and filed a general demurrer, but so far as is

shown, no ruling was had thereon.    From this decree Gregory appealed to the supreme court, but the cause was dismissed without a hearing on the merits, McDowell having appeared and denied the authority of Lamb and Billingsley to prosecute the suit.    The action was, upon his motion, dismissed.    See *McDowell v. Gregory*, 14 Neb., 33.    In 1883 Powell and the plaintiff in this suit appeared in the district court and each filed motions to set aside the decree and for leave to answer under the provisions of section 82, civil code.    But Powell having no interest in the property at the time of filing his motion, and Brigham (plaintiff) not having been a party to the action and having received his title after the decree, both applications were refused and this holding was affirmed in *Powell and Brigham v. McDowell*, 16 Neb., 424.    This action is now brought by Brigham to restrain McDowell from selling the eighty acres referred to and to which he holds title, or failing in that to require the property in the city of Lincoln on which Gregory executed the last mortgage to be sold first, and that this land may be held only for such deficiency as may exist after such sale.    The referee by his findings of fact and conclusions of law decided that the eighty acres owned by plaintiff was discharged from the mortgage, and that the temporary injunction should be made perpetual, and that McDowell was entitled to a decree foreclosing the mortgage executed by Gregory on lot 7 in block 122, in the city of Lincoln, and that said property should be sold to satisfy the unpaid balance of the original decree, which was found to be $1,496.95.    A decree was entered accordingly.    Defendants and Gregory appeal.

A number of questions are presented for decision by the appellants, some of which we will notice in the order in which they occur.    It is insisted that there has been a full and final adjudication of all questions involved in this suit by the judgments in the cases reported in 14th and 16th Neb. above referred to.    We cannot so hold.    The first

case was dismissed by the supreme court upon the uncontradicted showing of the plaintiff McDowell that the action was brought without his knowledge or consent. That he had not released the land, and that his attorneys, prior to the commencement of the action had purchased it for $250, although it was worth $2,000, and had caused it to be conveyed to a sister of one of said attorneys to be held in trust for them, etc. The action was simply dismissed without a final hearing, and the parties were restored to their former condition. Nothing could have been adjudicated there except the fact that as between the parties to the record the suit was instituted without authority. As to the second action, reported in 16 Neb., the only question there settled was that neither Powell nor Brigham was in a position which would entitle him to the benefits of the provisions of section 82 of the civil code. In order to constitute an adjudication of the questions involved in this action the judgments pleaded must have been between the same parties (or their privies) in an adversary proceeding, and a judgment must have been entered upon the merits or upon the questions presented in this action.

It is insisted that plaintiff has an adequate remedy at law, and is therefore not entitled to an injunction at all. That if his title fails his recourse should be had upon the covenants of his deed. As between plaintiff and McDowell alone this might be true, but as all parties interested are before the court it was proper for the referee to consider all the equities of the case and decide as to the rights of all. As we shall see further on it is clear that as between Brigham and Gregory the equities are with the former and the decree should be entered accordingly. Sec. 429, civil code.

Our attention is called to the evidence, and in this connection it is claimed that the referree erred in admitting the testimony of W. J. Lamb, who was the attorney for defendant McDowell in the suit for the foreclosure of the

mortgage.    This testimony related to the correspondence
and communications made between McDowell and Lamb
during the progress of the litigation and while the re-
lations of attorney and client subsisted.    It is claimed
that these communications were privileged under the
provisions of section 333 of the civil code, and the well-
known principles of the common law by which profes-
sional communications are protected in order that the
freest and most confidential relations may safely exist
between attorney and client.    This rule of law is too
well settled to require any discussion or examination
here, and it need only be said that we adhere to it in all
of its force and its proper application.    But as we have
seen, the contest here is not solely between plaintiff and
defendant McDowell, but is also between plaintiff and
defendant Gregory.    If the mortgage on the eighty acres
in question was released by McDowell, that is, if the condi-
tions imposed by him and known to Gregory had been fully
met and complied with, or if Gregory had no knowledge
of any such failure and had received the unconditional re-
lease of the mortgaged property and transferred it to a *bona
fide* purchaser in good faith, and all the *mesne* conveyances
to plaintiff had been in good faith and without notice, it
can be easily seen that plaintiff's equities would be much
greater than Gregory's.    In fact it cannot be well doubted
that as between plaintiff and Gregory, plaintiff would be
entitled to protection.    Since McDowell by his effort to sell
must be taken as in a hostile attitude to plaintiff, it becomes
an essential and pertinent enquiry as to whether he had
either approved the release at the time it was made as being
in compliance with the conditions imposed, or whether he
had ratified it afterwards by knowingly authorizing Lamb
as his attorney to reform the decree when the alleged mis-
take was discovered.    As between plaintiff and defendant
McDowell, we cannot see that the decision of the referee
was a violation of the rule invoked by plaintiff.    As we

view the case it must be treated substantially as if the deed from Campbell to Wells had been made directly to Lamb and Billingsley, who then were plaintiff's attorneys. The good faith of this transaction, or whether or not they could have been called upon by plaintiff for an accounting or not, or whether the purchase of the property was a violation of professional ethics, is not directly before us and need not be here discussed. Lamb and Billingsley were, in equity and good conscience at least, liable to plaintiff for the consideration paid them for the land in case of a failure of his title. To this extent the relations of McDowell and Lamb and Billingsley were adversary. The real question was one of authority on the part of Lamb and Billingsley to pursue the course adopted by them in conducting McDowell's suit. If McDowell, with full knowledge of all the facts in the case, had instructed them to abandon the mortgage as to the eighty acres and foreclose as to the city property in its stead, the authority and direction would not be a privileged communication. *Gower v. Emery,* 18 Me., 79. *Brown v. Payson,* 6 N. H., 443. *Fulton v. Maccracken,* 18 Md., 528. *Heister v. Davis,* 3 Yeates, 4. *Rochester Bank v. Suydam,* 5 Howard Pr., 254. *Burnside v. Terry,* 51 Ga., 186. *Nanve v. Baird,* 12 Ind., 318. *Satterlee v. Bliss,* 36 Cal., 489. *Mitchell v. Bromberger,* 2 Nev., 345. Again, suppose it were true, and which must be assumed to be the case until the contrary appears, that the title of plaintiff was not tainted by any want of good faith in his grantors, and that McDowell with full knowledge of the facts had approved the relinquishment of the mortgage, and based upon such approval the plaintiff's title had been acquired, it would be an infringement of all rules of right to say that after such voluntary act on the part of McDowell he might take advantage of the confidence reposed in his acts by the purchaser and by closing the mouth of his attorney as to his authority perpetrate a fraud upon those who had relied upon his conduct and that of his attorney. The rule

applicable to privileged and professional communications is intended for a shield to protect the confidence of a client reposed in his attorney, and not as an implement by the use of which he can defraud others. Taking all the circumstances of the case, as well as the relations of the parties to the suit, into consideration, we think the referee did not err in hearing the testimony of Mr. Lamb.

By the testimony and report of the referee we are informed that Gregory first mortgaged the land in question to defendant McDowell. Afterwards he succeeded in getting the city property substituted as security in lieu of the land, receiving a written release from the trustee. He failed to place this release on record. In securing the release he made an exchange of property by which he traded the mortgaged land for that which he mortgaged in its stead. He not only received the city property for the land, but also the sum of $800 in cash. He now asks that, notwithstanding the fact that he has once received full value for the land, it be still sold under the mortgage and the property received in its stead and mortgaged in its stead shall be protected from sale. We know of no rule either of law or equity which would enable him to do this. As between him and plaintiff the equities are all one way, and this without reference to the presence or want of good faith in Lamb and Billingsley or any other person in afterwards purchasing the land. The decision of the referee that the city property mortgaged by him in lieu of the land should be sold was right.

The next question is as to whether the decision of the referee that the temporary injunction by which defendant McDowell was restrained from selling the eighty acres first mortgaged by Gregory should be made perpetual was right. In order to a full understanding of the question we quote the 31st, 32d, 33d, 34th, 35th, and 36th findings of the referee, to-wit:

"31. I find about the 7th of September, 1878, the so-

called second suit was instituted in the name of Peter A. McDowell against the defendant Gregory *et al.*, in which it was alleged, in substance, among other things, the making, executing, and delivering of the note and trust deed as herein referred to, and the execution of the second trust deed herein named, and in which it was alleged that the said eighty acre tract had been, by arrangements made in 1876, released therefrom by Peter A. McDowell, at the instance and request of the Gregorys, and the lots named in the second trust deed taken in lieu of the eighty acres, that the Gregorys had fraudulently retained the said release in their possession and not placed the same on record, and they had concealed the fact of such alleged release from the knowledge of the said Peter A. McDowell's attorneys, and that the said stipulation upon which the decree in the first mentioned suit had been obtained, was obtained through fraud and misrepresentation practiced upon said McDowell's attorneys, and in which it was further alleged that the debt was still in full force and unsatisfied, and that such facts had not been discovered by McDowell or his attorneys until after the rendition of the decree in the above mentioned suit. A prayer of this petition, in substance, was that the first named decree should be vacated as to the eighty acres, and that the decree of the foreclosure should be made, which should include in its terms 160 acres of land and lot 7 in block 122. A more particular statement of the allegation of which will be found in the petition, which is a part of the bill of exceptions herein.

" 32. I find that on the 16th of December, 1878, Martin L. Powell entered appearance in said action, and on May 24, 1879, he filed in said action his general demurrer to the said petition therein filed, which demurrer was never ruled upon; that on October 10, 1879, Powell had leave to plead in said action, and that said Powell made no further appearance in said court.

" 33. That on the 16th day of December, 1879, pending

27

a prosecution of the said action, the said Campbell and her husband conveyed the said eighty acres of land to one Harry E. Wells, the consideration expressed in said deed being the sum of $250. That said Wells was a mere dry trustee, the beneficiary of the trust being Walter J. Lamb, Billingsley, and McMurtry, the said Lamb and Billingsley being two of the attorneys of the said McDowell in the said foreclosure proceedings.

" 34.    I find that prior to the said conveyance to the said Wells, and ever since about the 19th of April, 1878, the said Lamb and Billingsley, as McDowell's attorneys, and who were two real purchasers under said last named deed, had notice from McDowell that McDowell claimed and insisted that he had never released said eighty acres except conditionally, that is, upon the conditions as shown in the finding above named, referring to the letter of said McDowell of April 19, 1878, and that their purchase was with actual notice of McDowell's claim as there made.

" 35.    I find that in December, 1878, said McDowell, with Bowers H. Leonard, was in Lincoln, Nebraska, and at the time had an interview with Walter J. Lamb, and that at that time said Lamb told McDowell that he had commenced or would commence an action to have the house and lot substituted as security for the eighty.

" 36.    I find that on the 10th day of February, 1880, the said H. E. Wells conveyed the said eighty acre tract to E. S. Hume, a sister of L. W. Billingsley, who was merely a dry trustee holding title for the benefit of said Lamb, Billingsley, and McMurtry, which conveyance was made pending the prosecution of the said second suit."

By these findings it appears that while the decree was in existence by which the land in question was declared subject to the lien of the mortgage, and its sale ordered, and while Lamb and Billingsley were McDowell's attorneys, they, with McMurtry, purchased the land for much less than its value and caused the title to be conveyed to

another as their trustee. It cannot be questioned that the remarkably low price for which the land was purchased was owing to the existence of the decree against it procured by them. It would seem, also, that the necessity for a trustee bore some relation to that fact, and to this we might add the conveyances from one trustee to another. The action to substitute the city property for the land was pending, and this was also under their direction, although in the name of another attorney. Powell appeared in this second action. The question of the original jurisdiction of the court over the land, by reason of the omission of Lamb and Billingsley to include this land in the notice, now becomes wholly unimportant. It cannot be of any avail to Lamb and Billingsley, or any one purchasing from them with either actual or constructive notice of the proceedings. The decree stands to-day unchanged, the decree of the district court ordering the substitution of the property having been reversed in *McDowell v. Gregory, supra.* Neither Lamb and Billingsley nor their grantees with notice can acquire any rights in the land as against McDowell. The profit so quickly made by Lamb and Billingsley should have inured to the benefit of their client, but it seems it did not. The land was under the decree when they sold it. They knew this, and of course warranted against it, not only by the conveyance of their trustee, but also by their representations as to the condition of the title when certifying to the abstract. While it appears that McDowell had knowledge of the proceedings to change the decree, it also appears that when he ascertained all the facts he disaffirmed the action of his attorneys, and upon his motion and showing the cause was dismissed and the decree as originally entered allowed to stand. An opportunity was offered to his attorneys, when their authority was questioned, to sustain their action, but they saw proper not to do so. As between McDowell and plaintiff, it is clear that the land should be liable to be sold to satisfy the decree.

The decree of the district court must therefore be modified to the extent that in case a deficiency remains after the sale of said lot 7 in block 122, then an order of sale will issue for the sale of the land here in question to satisfy the same.

DECREE ACCORDINGLY.

THE other judges concur.