GEORGE W. HUME v. D. G. & W. A. WATT.

*Error from Douglas County.*

1. BONDS, BILLS AND NOTES: NOTICE OF PROTEST.—When the parties to a bill do not reside in the same city or town where protest is made, notice of the dishonor of the bill or note must be personal, or by leaving it, if the party be absent, at his dwelling house or usual place of business.

2. ID: DILIGENCE.—When a party lives in town at the same place where he has resided over three years, and when the notary has recently seen him and conversed with him, no amount of inquiry as to his residence will be sufficient without visiting the house where he has been known to reside so recently.

3. NOTICE TO PARTNERS.—Notice to one member of a firm of the dishonor of a bill or note is a sufficient notice to bind the firm.

4 ID.—When one of the members of a firm resides in a different place from where a note is protested, and another partner resides in the place where it is protested, notice must be given to the party last mentioned.

5. PLEADINGS.—What is alleged in the petition and not denied in the answer must be taken as true.*

This was an action brought on a promissory note of which a copy follows :

"$1000.          Lawrence, Kansas, Feb. 1st, 1867.

Seven months from date we promise to pay Watt Bro's, or order, one thousand dollars without interest, value received.    (Signed)

                 Danvers & Holmes."

This note was endorsed on the back as follows : "Pay to the order of John Hume, Watt Bro's." "Pay to the order of G. W. Hume, John Hume," and the petition contains an allegation "that said G. W. Hume is now the legal owner and holder of said note," and other alle-

·1. TRIAL: EVIDENCE.—When the petition alleges, and the answer does not deny that plaintiff is the legal owner and holder of the cause of action sued on, evidence, introduced in the court below relating to ownership of the cause of action, is not the subject of judicial review.

2. ERROR: CONFLICTING EVIDENCE.—The Supreme Court will not disturb the findings of the court below, on a point pertaining to which the record shows the evidence to be conflicting.

gations relative to protest and notice, showing the defendants, Watt Bro's, liable as endorsers.

The answer of defendants, Watt Bro's, contains allegations denying the presentation of the note to the makers, denies that defendants, Watt Bro's, or either of them, ever had "due and legal notice of said demand and nonpayment" and sets forth a small payment thereon.

The facts of the case, as shown by the testimony, are briefly: The firm of Watt Brothers had been doing business in Lawrence but had ceased prior to the maturity of the note. W. A., one of the firm, lived in Wakarusa township, outside of, but within two and a quarter miles from the city and got his mail at the Lawrence post office; D. G. still lived in Lawrence, at the same place he had resided while in business. The protesting notary did not know that D. G. resided in the city; made inquiry at the late place of business of the firm and was told by a young man there that he could not tell where the Watt Brothers lived, but thought one or both had moved out of town into the country; that he also inquired of one of the plaintiffs, and of one of the makers of the note, and neither of them were able to tell him where either of the brothers lived; that he made other inquiries of business men and learned that one of the brothers had moved from the city and lived in its immediate vicinity, and perhaps the other also; learned, from inquiry at the post office in Lawrence, that the Watt Brothers got their mail there, and he dropped the notice of protest in that post office, postage paid, directed: "Watt Brothers, Lawrence, Kansas."

Further statements as to the evidence on this point appear in the opinion of the court.

Evidence was introduced by both parties touching

the ownership of the note at the time the suit was commenced.

The case was tried by the court below and a general finding for the defendants, Watt Brothers, made, which is brought here for review as contrary to the evidence.

*Thacher & Banks*, for plaintiff in error.

*Akin & Barker*, for defendants in error.

*Thacher & Banks* submitted:

On the question of ownership:

1.   The facts proved·of the transfer, and the endorsement, in writing on the note, show a sufficient interest in the note to enable plaintiff to bring an action thereon under the 26th section of the code. [*Gen. Stat.*, 635.] A valuable consideration will be presumed. [*Comp. L.*, 351, § 6.]

2.   No defense having been interposed that plaintiff is not a *bona fide* holder, the endorsement gives plaintiff sufficient title, though he paid no consideration.· [*James v. Chalmers*, 5 *Sandf.*, 52.   See also, *Seeney's Code*, 57, *note* 11, *note* 9; *id., p.* 58, *note*; *Smead et al. v. Fay*, 3 *Law Gaz.*, 281; 42 *Barb.*, 122; *Lewis v. Graham*, 4 *Ab. Pr. R.*, 106; *Harris v. Schultz*, 40 *Barb.*, 315; and particularly *Cummings v. Morris*, 3 *Bosw.*, 560, 576, 577 *affirmed in* 25 *N. Y.*, 625.

3.   But the allegation of ownership in the petition, not denied in the answer, is conclusive on this point; no proof of a want of ownership in plaintiff was admissible.

On the question of protest:

1.   Watt Brothers endorsed the note while co-partners

and the notary protesting had the right to treat them as such in giving notice of protest, and was called upon only to be reasonably diligent in his efforts to serve notice personally. *Bateman's Com. L.*, § 374; 2 *Caine*, 121; 15 *Wend.*, 367; 5 *Binn.*, 543; 1 *Johns.*, 294; 4 *How.*, [*U. S.*] 347-8; *Comp. L.*, 113, § 6; 2 *Pet.*, 552, [8 *Curt.*, 208;] 10 *Pet.*, 582, [12 *Curt.*, 254;] 4 *How.*, 347, [16 *Curt.*, 137;] 5 *Yerg.*, 67; 1 *Pet.*, 582; 7 *Yerg.*, 307; 9 *id.*, 255.

2. He is shown to have been diligent in his inquiries, and that he *learned* therefrom that one, at least of the co-partners lived out of the city, in its immediate vicinity and got his mail at the city post office. On such information he had a right to act—and to confine his efforts to making legal service upon this one co-partner alone—wherever the other might live. 1 *Pars. Notes*, 502; *Collyer Part.*, §§ 447, 443, [5th *Ed.*;] 3 *Phil. Ev.*, 212 [4 *Am. Ed.*;] 1 *Am. L. C.*, 406, *citing* 4 *Smeade v. Marsh*, 749.

3. The notary acted from positive information, derived from a reasonable source. When some one is found who *professes* to give the information, the notary may act upon it. [1 *Pars. Notes*, 491-2, *and note* 496 *and note* "*h.*"] But he may act upon the best information he can get, although it be uncertain. 4 *How.*, 346.

4. When a note is endorsed by the holder and sent to an agent for collection the latter need not give notice to all the parties, but it is enough if he notify his principal, who may charge the prior parties by giving them notice himself; and this, though it appear that, had notice been sent by the agent, they would have been received sooner. *Dunlap Pal. Agency*, 39, *note* "*u,*" *Bank U. S. v. Davis*, 2 *Hill*, 457; *Mead v. Engs*, 5 *Cow.*, 303.

5. So, if Watt Brothers, or either of them, received notice as soon as they would, had John Hume, their

endorsee, sent it to them from Humboldt, it is sufficient. 1 *Pars., Notes* 516.

6. Not only was the diligence exercised sufficient to make the endorsers liable, whether they ever received the notice actually or not, but the record shows good service on W. A. Watt, and in time.

7. When the party to be served lives in a different town from that of protest, but uses the post office in the town where the protest was made, the mail may be used as a place of deposit for the notice. [*Carson v. Bank Ala.,* 4 *Ala.,* 148; *Bank Columbia v. Lawrence,* 1 *Pet.,* 578; 5 *Blackf.,* 447; 7 *id.,* 456, 610; 28 *Mo.,* 331; 1 *Pars., Notes* 483, *note and text* 4; 4 *How.,* [*U. S.*] 344; *Hartford Bank v. Steadman,* 3 *Conn.,* 489; 8 *Frost,* 302; 5 *Met.,* 212; 2 *Pet.,* 552 [8 *Curt.,* 208-9.] 1 *Am. L. Cases,* 403. See 2 *Johns.,* 274. [*Ogden v. Cowley.*]

8. Service on W. A., was good as to both co-partners as we have seen. It is not for him to say on which co-partner the notice should be served, unless he does it in the endorsement. At least, the service on W. A. was good as to him; and this is sufficient to reverse the judgment. Every inference fairly deducible from the facts, which affords a presumption of due notice ought to be made in favor of plaintiffs. *Bank U. S. v. Carmal,* 2 *Pet.,* 551 [8 *Curt.,* 207.]

9. When service by mail, or by depositing notice in the post office is proper, proof of the service will be complete when it is shown that notice was deposited in time. 3 *Kern.,* 558. This was shown by the evidence of the notary, Mr. Hadley.

10. The date stamped on the envelope of the notice, by the postmaster, is no evidence contradictory of the testimony of Hadley. 1 *Pars. Notes,* 513 *note.*

In the notes to Smith's Leading Cases, where the whole subject of notice to endorsers is ably discussed in the light of an elaborate review of all the modern cases, it is laid down as follows: " Of late the courts (State courts) have evinced a disposition to restrict this rule, (the rule requiring personal notice) within narrow limits." 1 *Smith's Lead. Cas.*, *p.* 402, [*Ed.* '57.] On page 403 we find: "It is obvious that the rule requiring personal notice, when the parties reside in the same place, has lost its reasonable force, and exists only by authority. Instead of undermining it with exceptions that conflict with it in principle, and render the subject embarrassing in practice, it would be much better to declare that the rule itself has become obsolete and is abolished."

*Akin & Barker, for defendants*, submitted:

1. , Every action must be prosecuted in the name of the real party in interest. *Comp. Laws* 1862, *sec.* 32, *p.*, 129. George W. Hume, plaintiff, not being the owner of the note in controversy, cannot, therefore, maintain this action.

2. This, we apprehend to be the settled doctrine governing questions of notice of dishonor. " Where the parties to a bill or note reside in the same city or place, notice of the dishonor of the bill or note, must be personal, or tantamount thereto, or by leaving it, if the party is absent, at his dwelling house or usual place of business." *Ireland v. Kip*, 10 *Johnson*, 490; 11 *id.*, 231-2; *Smedes et al. v. The President and Directors Bank of Utica*, 20 *Johnson*, 372 to 383; *Berry v. Johnson*, 9 *id.*, 121; *Ransom v. Mack*, 2 *Hill*, 587; *Van Vechien v. Pruyn*, 3 *Kernan*, 549; *Bank U. S. v. Corcoran*, 2 *Peters*, 121; *Pierce v. Pendar*, 5 *Met.*, 352; *Sheldon v. Benham*, 4

*Hill*, 129 to 133; *Cayuga Co. Bank v. Bennett*, 5 *id.*, 241; *Williams v. Bank U. S.*, 2 *Peters*, 30 *and* 32; *French v. Bank of Columbia*, 4 *Cranch*, 164; *Louisiana State Bank v. Rowel*, 18 *Martin*, 506; *La Porte v. Landry*, 17 *id.*, 359; *Clay v. Oakley*, 17 *id.*, 137; *Shepherd v. Hall*, 1 *Conn.*, 329; *Hartford Bank v. Steadman*, 3 *id.*, 489; *Bank of Columbia v. Lawrence*, 1 *Peters*, 578; *Edwards on Bills and Prom. Notes*, 615 to 622; *Doebree v. Eastwood*, 3 *Car. and P.*, 250; *Story on Bills of Ex.*, §§ 289, 297, 300 *and* 382; *Bank v. Bennett*, 1 *Yerg.*, 166; 3 *Kent's Com.*, § 44, *p.* 106 *and* 107, note " *A* " [*4th Ed.*;] *Creamer v. McDonald*, 8 *Watts and Serg.*, 138; *Saul v. Brand*, 1 *Robinson*, (*La.*) 95; *Chitty on Bills*, *ch.* 10, *page* 502 to 504, [*8th Ed.*;] *Bayley on Bills*, *ch.* 7, § 2, *page* 276 to 278; 3 *McLean*, 96 *and* 97.

*By the Court*, KINGMAN, C. J.

The first question to be passed upon in this case is: whether the plaintiff in error is the real party in interest.

PARTIES:

He is stated in the petition to be " the legal owner and holder of said note " and this is in no way either directly or by implication denied by the answer and must be taken as true. It would be manifestly improper to hold the plaintiff bound by any evidence that might by some oversight be introduced in the case, when he had had no notice that it would be attempted and he wholly unprepared for it, under the pleadings as they stand and for all purposes to be affected by them, the plaintiff in error must be taken conclusively as the real party in interest and having the right to bring his action on it. It is to be taken as a fact, not disputed or disputable. It being admitted by the pleadings is not in issue nor the subject of testimony, and any testimony appearing is not the subject of judicial investigation.

NOTICE OF PROTEST:
Promissory notes.

The other question in the case arises upon the sufficiency of the notice given to Watt Bros., of the dishonor of the note. As a firm they were the endorsers of the note and as such are sought to be held liable in this action. On the 4th day of September, 1867, the note was presented to the makers and payment demanded; upon failure to pay, the note was duly protested for non-payment, and notice thereof the same day deposited, post-paid, in the post office of Lawrence, directed to Watt Brothers, at Lawrence, Kansas. The notice was actually received by them on the 8th day of September.

The facts of the case, as shown by the testimony, are briefly these : The firm of Watt Brothers had been doing business as a firm in Lawrence, but had closed up their business previous to the maturity of the note; W. A. Watt lived in Wakarusa township, outside of the city, and about two miles and a quarter from it; D. G. Watt lived in Lawrence at the same place where he had resided since 1864. The notary, Mr. Hadley, who made the protest of the note testified that when he protested the note he made inquiries at the late place of business of Watt Brothers, and was told by a young man there " that he could not tell where the Watt Brothers lived, but thought that one, or both, had moved out of town into the country." He also inquired of the plaintiff and of one of the makers of the note, and neither of them were able to tell him where either of the brothers lived; he also made inquiries of other business men, and from all his inquiries could not learn where the Watt Brothers resided, except that he learned, that " one of them had moved from the city and town," and the other also. He inquired at the post office and learned that the Watt

Brothers got their mail there; and dropped the letter in as mentioned. He further testified that he did not know that he had seen D. G. Watt up to the time of this transaction, but thinks he had seen W. A. Watt. In the cross-examination it appears that the plaintiff told the witness that he was not able to tell whether either of the Watt Brothers lived in town.

The maker of the note, of whom he inquired, was one of the firm who bought out Watt Brothers, and he said he did not know that they lived in town, or where they lived; witness knew that they both had once lived in town, but had understood that both had removed. The defendant, D. G. Watt, testified that at the time of the protest of the note he lived on the northwest corner of Ohio and Henry streets, in the city of Lawrence, at the same place where he had resided since 1864; that he knew the notary, Mr. Hadley; that Mr. Hadley had seen him at his house, and that only a short time before the note became due he had spoken to Mr. Hadley from his house; that he was on the street on the 5th, 6th and 7th days of September; was engaged in settling up business and arranging to build in the county. W. A. Watt testified that he got the notice from the post office on Sunday the 8th; that he called at the post office on the 6th, and there was nothing for him. It appears from the envelope that the post-mark was on the 6th, and the postmaster testified that it was the general custom of the office to stamp the drop letters four or five times a day and that a letter put in on the 4th should have been stamped of that date, or at least of the 5th.

The cause was tried by the court below, a jury being waived and all the evidence spread upon the record. There was a general finding for the defendants, Watt

Brothers, and the case is brought to this court to reverse the same. It is claimed· upon the testimony that the notice was sufficient on two grounds: *First*—Because the notary used reasonable diligence in inquiring after the residence of the endorsers, and followed reasonable information in giving the notice. *Second*—That the service upon W. A. Watt was sufficient and legal, and that service upon one of a firm, who endorse a note, is sufficient to hold all.

PROTEST: DILIgence.

As to the first cause: Was there reasonable diligence on the part of the notary?

It has been too often settled on well established principles to need elucidation here that in a case, such as this, if there be conflicting testimony, this court will presume that the court below, in weighing the evidence, having had the opportunity to see the witnesses—to observe their manner and bearing—has given the preference to that testimony that will support the findings of the court; and that this court will not disturb such findings any more than they will those of the jury in a like cause.

Looking at the evidence in this light, and it appears that the notary knew that the Watt Brothers had been doing business and residing in Lawrence; knew where one of them had resided but recently before the protest, but acting upon the impression that they had moved away—for it appears that none of those of whom he made inquiry, and who are mentioned by name or discription in his testimony, pretended to know that both of the brothers had left town; so, as observed, acting under this impression, he prosecuted his inquiries with sufficient diligence and to a reasonable extent; but it seems to us that he ought to have been certain that they had moved away, or visited the residence where he had

so recently seen one of the brothers. The answer he received should have suggested doubt whether both had left town; and there was hardly a field open in which to prosecute his inquiries as to where they had gone till he had ascertained that fact, and it was one easy to settle for had he gone to the place where Watt had resided for over three years, of which residence he had notice, he would have found him there and his inquiries would have been at an end. No investigation was necessary, and no amount of inquiries will excuse the neglect of seeking Watt where he had so long resided. The diligence is admitted and is deemed sufficient in that direction, but it was not of any value, for it was conducted upon a false supposition and one that could so easily have been tested. We are sure that the residence of a business man in a place like Lawrence, when he had resided at the same place three years, can be ascertained by reasonable diligence. Therefore the notice through the post office was not the proper notice to D. G. Watt, for it is settled by a long course of judicial decisions that, when the indorser resides in the same place with the party who is to give notice, the notice must be given to the party personally or by leaving it at his domicil or place of business, unless such service be excused, after the use of reasonable diligence, by inability to find the party, or his residence, or place of business.

PROTEST: NOTICE. As to the second point: we apprehend it is good law that a service of notice of protest upon one member of a firm who endorse the note or bill is sufficient service to hold the firm bound, but cannot admit the right to give notice to a person abroad and omit the party at home. On principle, it would violate the entire object of the notice, if the party protesting in

Lawrence might send the notice to San Francisco to a partner there and keep the other partner in Lawrence in ignorance of the dishonor of the paper on which the firm name was placed.   We have not been able, after a long search, to find any authority on this point, but are certain that the law would not authorize such action as is above suggested.   Yet that must be good in the case supposed, or it is not good in this case, for the principle is the same, and we cannot sanction it.   It would open a door for all sorts of bad faith.   The notice is given that the party may protect himself; and of what benefit would a notice be that might be so used as to mislead rather than to inform.

We do not decide whether a notice sent by mail in this case would be good against W. A. Watt, were he the sole endorser.   The authorities are most numerous in support of that view.   *See the Bank of Columbia v. Lawrence,* 1 *Peters,* 578; *Bell v. the State Bank,* 7 *Blackford,* 460; 5 *id.,* 447; 1 *Parsons on Notes,* 483; and contra, see *Ireland v. Rip,* 10 *Johns., R.,* 492.

But it is not necessary to decide that point—because with our view of the case it was obligatory on the party, giving the notice, to give it to the party in town.

The decision of the court below must be affirmed.

All the justices concurring.