## N. J. SWAYZE v. C. A. BRITTON.

1. NOTARY PUBLIC; *Service of Notice of Protest; Agent of Party.* It is no part of the official duty of a notary public, by the general law-merchant, or the statute of this state, to give notice of the protest or dishonor of a bill, or note; and although it is usual and convenient for the notary to give the notice in such case, he is the mere agent of the holder or party authorized to give the notice.

2. CONSTITUTIONAL LAW; *Title of Acts; Ch. 110, Laws of 1871.* Section one of chapter 110 of the laws of 1871, is unconstitutional and void, because in conflict with section 16 of article 2 of the constitution of the state, as the subject-matter therein contained is not expressed in the title to the act.

*Error from Chase District Court.*

ACTION by *Swayze* against two parties as makers, and two others as indorsers, of a promissory note. The note was for $1,500, dated 1st May 1875, payable ninety days thereafter, with interest from maturity at twelve per cent. per annum. The makers pleaded usury. The indorsers answered separately, and each a general denial. Trial at the December Term 1875. Findings and judgment for plaintiff against both makers and one indorser, for $1,493.80, and costs, and finding in favor of defendant *Britton*, and judgment in his favor for costs. *Swayze*, plaintiff, brings the case here, seeking a reversal of the judgment as to defendant *Britton*.

*Gillett & Forde*, for plaintiff.

*Ruggles & Sterry*, for defendant Britton.

The opinion of the court was delivered by

HORTON, C. J.: In May 1869, this court in the case of *Hume v. Watt*, 5 Kas. 34, decided that when the indorser of a bill of exchange or promissory note resided in the same city or town where the protest thereof was made, notice of the dishonor of the bill or note must be personal, or by leaving it, if the party be absent, at his dwelling-house, or

usual place of business. In 1871 the legislature attempted to change this rule, or rather to avoid this decision, by passing an act entitled "An act concerning notaries public," approved March 2d 1871, (Laws 1871, p. 270,) by the first section of which it is provided, that "services of notices of protest on parties residing in the town or city where such protest is made, may be by depositing such notice in the post-office, in a sealed envelope, addressed to such person, with the postage prepaid." The question is raised in this case, that the legislature was not successful in its attempt, because it is alleged that said section 1 of said law, (ch. 110, Laws of 1871,) is in conflict with that part of section 16 of article 2 of the constitution of the state, which prescribes, "No bill shall contain more than one subject, which shall be clearly expressed in its title." The facts in the case are, that on May 1st 1875, John McDowall and Alex. Hughan made their promissory note to James Rayburn, whereby they agreed to pay to Rayburn or order, ninety days after date, fifteen hundred dollars, payable at the office of the Chase County Bank, in the city of Cottonwood Falls, in Chase county, Kansas, with interest at the rate of twelve per cent. per annum after maturity, and reasonable attorney-fees if collected by suit. The payee of the note, for a valuable consideration, and before its maturity, indorsed the note and delivered it to C. A. Britton, who for a valuable consideration indorsed the same and delivered it to plaintiff in error, who afterward brought suit thereon against the makers and indorsers. Britton answered separately. The case was tried by the court, a jury being waived, and in addition to the general finding for the defendant Britton, the court also made special findings of fact, and conclusions of law.

The question of law presented by the findings of fact is, whether the service of notice of protest by placing it in an envelope addressed to C. A. Britton, Cottonwood Falls, Kansas, and deposited, duly stamped, in the post-office, at said Cottonwood Falls, is sufficient notice to bind the said Britton as an indorser, who lived in the same town at date of protest.

If section 1 of the law of 1871 above quoted is valid, the service of the notice of protest made was sufficient; if said section is in conflict with § 16 of article 2, of the constitution, then there was a want of legal notice, in the absence of any finding that the indorser actually received such notice on the same day, or the next after the note was dishonored. This court has held that the constitutional provision, that "no bill shall contain more than one subject, which shall be clearly expressed in its title," is mandatory. *Comm'rs of Sedgwick County v. Bailey*, 13 Kas. 600; and hence our examination of the question presented will be to ascertain whether said section is clearly expressed in the title of the act. The act, as above stated, is entitled, "An act concerning notaries public." The first question which naturally suggests itself in the determination of this matter is, Whose duty is it to give the notice of protest? The doctrine is well settled, that any party to the instrument, whose liability is fixed, or who, on the paper being returned to him when he pays it, will be entitled to reimbursement from some prior party, may personally give this notice. Thus, if the holder duly notifies the sixth indorser, and he the fifth, and he the fourth, and so on, to the first, the latter will be liable to all the parties. (2 Daniel on Negotiable Instruments, 42.) It is equally well settled, that the notice given by an agent is the same as if by the holder himself; and it may be in the agent's name, or in the name of another party. The notice is usually in writing, but it is sufficient if it be given verbally. Hence, as service of notice of dishonor can be given without the intervention of a notary public, after the protest is made, by any person who stands in any relation to the paper as above stated, we cannot conceive how it can be claimed that said section can apply to all notices of protest served through the post-office on parties residing in the town or city where such protest is made. The title of the act is limited to "notaries public." No reference is made therein to "notes," or "bills," or the "service of notices of protest." Holders, indorsers, or their agents (not notaries public) giving notices of protest, are not

included in any part of the title of the act. As to all notices of protest given by persons not notaries public, in accordance with the provisions of said section, without further argument, we think it will be conceded that they are insufficient to charge the parties on whom it is intended to fix liability, unless actual notice is shown. As to this class of notices, section 1 is absolutely void, as being in conflict with section 16 of article 2 of the constitution of the state. Indeed, the learned counsel for the plaintiff in error almost admit this conclusion in their brief, as they state, "It seems to us that the most that can be fairly claimed (if anything) on the other side would be, that said section 1 would only be unconstitutional (if at all) in so far as applied to validate notices served in this way by persons other than notaries public." Under this conclusion the usefulness or importance of said section 1 is almost entirely destroyed, if by any reasoning it could be held valid as to notices of protest served, as therein provided, by notaries public.

The next question for consideration is, in what capacity does a notary public act in giving notices of protest? Is it an *official act*, or does he simply act as the *agent of the party* for whom he makes the protest? By the law-merchant the notary to whom the bill or note has been given for presentment, may, as the agent of the holder, give notice; but it is no part of his official duty. *Burk v. McKay*, 2 How. 66; *Harris v. Robinson*, 4 How. 336; 2 Daniel on Negotiable Instruments, § 991, page 45; 1 Parsons on Notes, ch. 12, § 5, page 506. Unless then the statutes of our state have conferred upon notaries public this official duty, it would be a misnomer to say that "an act concerning notaries public" clearly expresses in its title the manner of serving notices of protest, or even directs by its title an examination of the provisions of the act to ascertain anything in relation to such service. The duties and powers of notaries public in relation to bills and notes are stated in section 6, ch. 71, Gen. Stat. 1868, page 597, and are as follows:

"SEC. 6. Notaries public shall have authority * * * to

demand acceptance, or payment, of foreign and inland bills of exchange, and of promissory notes, and protest the same for non-acceptance, or non-payment, as the case may require, and to exercise such other powers and duties as by the law of nations and commercial usage may be performed by notaries public."

Section 18, ch. 14, Gen. Stat. 1868, page 117, provides, "that a notarial protest shall be evidence of a demand and refusal to pay a bond, promissory note, or bill of exchange, at the time and in the manner stated in such protest, until the contrary is shown." Technical words, by our statute, must be construed according to their peculiar and appropriate meaning; and the word "protest," has a well-known and well-defined signification in law. It means only, the formal declaration drawn up and signed by the notary. It is stated by Daniel, vol. 2, § 929, p. 4, of his work on negotiable instruments, "that a protest is the solemn declaration on the part of the holder against any loss to be sustained by him by reason of the non-acceptance, or even non-payment, as the case may be, of the bill in question; and the calling of the notary to witness that due steps have been taken to prevent it." Burrill's Law Dictionary defines it as follows:

"A formal statement in writing, by a public notary, under seal, that a certain bill of exchange or promissory note (describing it) was on a certain day presented for payment, or acceptance, and that such payment or acceptance was refused. Whereupon the notary *protests* against the parties for the loss or damage which may arise therefrom." 2 Burrill, 349.

A like meaning is given in Bouvier's Law Dictionary, vol. 2, § 3, page 390. The section of the statute above quoted, declaring that a notarial protest is evidence only of a demand and refusal, is in accordance with the legal definitions of *protest*, and additional authority that the protest does not include the giving of the notices thereof; and as a necessary conclusion, that such act is no part of the official duty of the notary. If the notary gives the notice, he is the mere agent of the holder or party authorized to give the notice. *Pinkham, Executrix, v. Macy*, 9 Metcalf, 176; *Smedes v. Utica Bank*, 20

Johns. 372; *Crawford v. Branch Bank*, 7 Ala. 205; *Shed v. Brett*, 1 Pick. 401; *Fulton v. McCracken*, 18 Md. 528; *Renick v. Robbins*, 28 Mo. 339. And so held by this court, at the present term, in *Couch v. Sherrill*, ante, page 624. Again, section 5 of the act respecting notaries public (Gen. Stat. 1868, page 597,) prescribes that "every notary shall provide a notarial seal, containing his name and place of residence, and he shall authenticate all his official acts, attestations, and instruments therewith." If the counsel for plaintiff in error are right in their conclusion, that the term "protest," as used in section 6 of the notary act, above quoted, includes not only presentment and demand, but also notice of dishonor, then such notices should be authenticated by the seal of the notary. Such is neither the practice, nor does the law require it. Indeed, we do not think any one will seriously contend that the notary, when giving written notice of dishonor of a bill or note, should authenticate such notice with his official seal. It is not an official act. No seal is necessary. Nor need the notice purport to be issued under the official seal of the officer. From these deductions we arrive at the result, that a notary public in giving a notice of protest of paper is not acting officially, and only performs the act as the agent of the party having the right to give such notice, and therefore that section 1 of ch. 110, laws of 1871, is unconstitutional and void, as the matters therein contained are not expressed in the title to the bill, as required by § 16 of article 2 of the constitution of the state.

It is argued in the brief of counsel of the plaintiff in error, that it is usual and customary for notaries to give the notice of dishonor, and as there is a fee of ten cents provided by the law of 1875, ch. 99, for notaries public for each notice of protest, (which was formerly fifty cents, Gen. Stat. § 9, page 480,) therefore notaries should be held as officially empowered to act in that respect. In reply we answer, that while it is true that usually such notices are thus given, it is not infrequently the case that the notary makes out the notices, and sends them to the holder, or the bank from

which he receives the note for protest, and thereupon the holder himself, or the officers of the bank, make due service of the notices of dishonor. In all cases, where the residence of the indorsers to the paper are unknown to the notary, this is done. If the holder, or other party interested, wishes the notary to give the notice as his agent, the statute fixes the compensation, but does not thereby make the giving such notice the official act of the notary; nor do we think the frequency with which notaries give notice of ·dishonor of paper a sufficient reason for holding the title of the act as expressive of the subject-matter in section 1, as the act of giving the notice is one of *agency*, and not a *notarial* one. A title relating to agents would be more expressive of section 1 than the one adopted by the legislature; and yet such a title would be insufficient within the meaning of the constitution. We hold that the cases cited, of *Turner v. Rogers*, 8 Ind. 140, and *Fisher v. State Bank*, 7 Blackf. 611, are not in point, as the certificates of notaries in that state are evidence of the facts therein set forth, and the laws of Indiana differ from ours in this and other respects.

Neither are we convinced that we should, for fear of causing disastrous results, as counsel who ask us to reverse the action of the court below suggest, reach a different conclusion than we have as to the constitutionality of said section 1. We do not think that the effect of this decision will be very calamitous in the state. The section under ban, could not possibly apply to other notices than those given by notaries, by any stretch of judicial power; and in no future case will this decision have any effect to discharge an indorser, or other party liable to be charged on a bill or note, by protest, and notice thereof, where the actual receipt of such notice, within the proper time, can be shown. We cannot presume that parties who have received such notices as the one sent in this case, will under oath deny the fact. In the case at bar, on the trial of the same, it does not appear that any effort was made to show that Britton actually received the notice, and no finding is made, or asked for by any party, thereon. Whether

the circumstances of the case prevented such proof, or whether it was not thought necessary, we are not informed. Hereafter when cases of this exact character are tried, we suppose an attempt, at least, will be made to show the actual reception of the notice of dishonor; and when a notice, placed in a sealed envelope, duly addressed, with the postage prepaid, is deposited in the post-office of the town or city where the party to whom it is directed resides, but little difficulty ought to be experienced in obtaining sufficient evidence to support a finding that such person actually received the same. In further opposition to the doctrine advanced by counsel for plaintiff in error, that this court ought, if possible, to hold said section 1 constitutional, to conserve important pecuniary interests resting thereon, we reply, that it would be favoring pernicious legislation to say that notices of dishonor given by one person, in one way, are good, and like notices given in the same way by another person who has the same right to give them, are bad. Such a ruling would lead to "confusion worse confounded." The legislature never intended to make this distinction in the manner of serving notices of protest.

The judgment will be affirmed.

VALENTINE, J.: The "subject" contained in section 1 of the "act concerning notaries public," (Laws of 1871, page 270,) is not only not "clearly expressed" in the title of said act, as required by the constitution, (art. 2, §16,) but it is clearly, as I think, not expressed in the title in any manner whatever. Therefore said section 1 has no force.

BREWER, J., *dissenting:* I think the majority of the court are giving to the constitutional provision concerning the title of bills, a more technical and stringent construction than it should receive. The purpose of this provision was, to prevent surreptitious legislation by incorporating into a bill matters entirely foreign to the general subject of the act, and of which the title would to the ordinary understanding give no indication. But if there is such a connection between the

general subject of the act, as indicated by its title, and the particular section, as would make the one suggest the other, although the connection arises, not from any strict legal relation between the two, but from the general customs of business, and the common understanding and use of certain terms which in strict legal sense may have a more limited signification, this constitutional provision has no application. Now I agree with most of the propositions of law stated by the Chief Justice in the opinion of the court. It is no part of the official duty of the notary public to serve notices of protest. His official action ends with the protest. Anybody may serve the notice, and serving, serves it as the agent of the holder or party authorized to give the notice. The term "protest," in its strict legal sense, does not include "notice." That is a separate and independent act. Yet it is equally true, that, generally, the notary does serve the notice. He makes the protest, and serves the notice, in fact does everything necessary to charge the indorser. And in common parlance the term "protest" is used to include the entire proceedings necessary to charge the indorser. If a business man hands a note to a notary, with the request that he "protest it," he expects him, without further words, to give notice. It is his customary act. And if one business man asks another whether a note has been protested, in his thought he includes *notice* as well, and expects an answer accordingly. Now it seems to me, that legislation may properly rest on the customary methods of transacting business, and the common use and understanding of terms. I venture the assertion, that not one business man in a thousand would be astonished to find in an act concerning notaries public a provision concerning notices of protest, and that only the ingenious and critical lawyer would ever think of this constitutional provision working a prohibition upon such legislation. I think that § 1 of said act of 1871 is valid, and should be upheld.