FRANCES R. WILLIAMS V. FRANK PARKS ET AL.

FILED FEBRUARY 6, 1902.    No. 10,975.

Commissioner's opinion, Department No. 1.

1. **Promissory Note: PROTEST: INSTRUCTION.** Instruction sent with a note forwarded by one bank to another for the purpose of collection, "to protest," *held* to mean, and to have been understood to mean by the notary, to whose attention it was called, that the necessary steps to bind indorsers were to be taken.

2. **Return of Protest.** While a prompt return to the sender of a protest, showing no notice to an indorser, would have enabled it to serve notice in time, having entrusted that duty to notary, it was not bound to make examination to see whether it was done. He should either have discharged the duty, or called attention to the fact that it was not done.

3. **Notary**: ACTION ON BOND: LIABILITY. Giving notice of dishonor of protested paper, is, in the absence of contrary instructions, an official duty of a notary public, in Nebraska, for neglect of which an action is maintainable by the party injured upon his official bond.

ERROR from the district court for Lancaster county. Tried below before FROST, J. *Reversed.*

*Morning & Berge,* for plaintiff in error.

*Ames & Ames* and *Wilson & Brown, contra.*

HASTINGS, C.

Plaintiff's amended petition in this case sets out a note for $1,500 made and delivered by one C. J. Hale, in 1889 to the Nebraska Wesleyan University, with interest coupons attached, for interest at 8 per cent., due July 24, 1894, and payable at the State National Bank, of Lincoln, Nebraska; that this note was for value, sold and delivered to Miles & Thompson, with indorsement as follows: "The Nebraska Wesleyan University, By W. G. Miller, Pres. Bd. Trustees, C. A. Atkinson, Secy.";—and was afterwards sold for value, in the ordinary course of business, to the plaintiff, with the following guarantee: "We guarantee the payment of this note principal and interest at the First National Bank of Davenport, Iowa, as it becomes due without expense to the holder of the note. J. L. Miles. James Thompson"; that on July 23, the plaintiff caused the note to be sent to the First National Bank of Lincoln for collection, with instructions to present and demand payment of it, and, in the event of refusal, to properly protest, and give notice of the non-payment to the Nebraska Wesleyan University; that the defendant Parks was a notary public and the defendants Harwood and Hanna, his bondsmen; that Parks was an employee of the First National Bank, and on July 27, 1894, the note was turned over to him as notary public with instructions to present for payment, and, if refused, to protest, and give notice to the university, and

take such steps as were necessary to hold it liable, all of which he undertook to do; that he failed, negligently, to give notice to the university, and thereby it was discharged; that suit was brought against the university in February, 1895, upon the note, and it set up the failure to give it requisite notice and judgment was rendered in its favor; that the maker of the note, C. J. Hale, is and has been ever since before its maturity, insolvent and out of the jurisdiction; that the guarantors are both dead and their estates insolvent; that the university is solvent and financially responsible, and, by the failure of Parks to give it due notice, plaintiff has suffered damages to the extent of $1,500, and interest at 8 per cent. per annum from November 24, 1891. The defendants admit the making and delivery of the note; admit that it was sent to the First National Bank for collection, but deny that any instructions were given with it. They admit that Parks was a notary, and the other defendants sureties on his official bond, and that the bank turned the note over to him at maturity, but deny that it gave him any instructions with reference to the notice of non-payment to the university, and deny the allegations of failure. They also allege that Parks was an employee of the bank; was appointed a notary for the bank's convenience, that he might protest its own paper and such as it had for collection; that it procured the sureties to sign his bond; that he acted solely for the bank as its clerk and agent, and received no compensation for such services as notary public, either from the plaintiff or from the bank; and that as agent and employee of the bank, he presented and protested the note in due form of law. The reply was a general denial. The action was tried to the court, which entered a general finding for the defendants and a judgment of dismissal and for costs. Plaintiffs filed a motion for new trial on the ground that the judgment was not sustained by sufficient evidence and that it is contrary to law, which was overruled; and the same errors are assigned in this court.

The facts in the case are either admitted or undisputed.

The protest recites that notices were served upon W. G. Miller, president, by addressing such notice to him at University Place, Nebraska, and on C. A. Atkinson, secretary, by delivering notice to him personally.  Notary's fees are charged upon the certificate as follows:

| "Protest | $1 00 |
|---|---|
| Recording protest | 50 |
| Certificate and seal | 25 |
| 6 notices at 25 cents each | 1 50 |
| Postage | 06 |
| Total | $3 31" |

It appears that the note was received from the Commercial National Bank of Omaha with the following letter, which was called to Mr. Park's attention:

"OMAHA, NEBRASKA, July 23, 1894.

*"First National Bank, Lincoln:*  We enclose herewith for collection and Cr. Number. 51451 Name.  Note & Mtg. Due, 7-27  Protest.  Yes.  Amount 1500 & Int.

"ALFRED MILLARD, *Cashier.*

"Please report by our number.  Do not hold collections past maturity.

"First National Bank, Lincoln, Neb. Jul. 24, 1894.  Received."

The notary returned the note, with his certificate of protest, to the First National Bank, and it was subsequently returned to the Commercial National Bank of Omaha. Mr. Parks had charge of the collection department of the First National Bank.  He does not remember of any other notices.  The charge for fees was in Mr. Park's hand-writing, and he supposes they were paid.  There was a post office at University Place at that time.  He says he got no part of the fees; that the First National Bank procured his bond; that protesting paper was a part of his duties as manager of the collection department of the bank, and he also had charge of the correspondence relating to the collections.  It sufficiently appears, also, that the maker of

the note, C. J. Hale, was entirely insolvent at the time of the protest, and has been ever since. A similar showing was made as to the estates of James Thompson and John L. Miles. C. A. Atkinson ceased to be secretary of the university in 1891. His signature as secretary to the indorsement of the note was proved. W. G. Miller was shown to have been dead as early as 1893. The university has always been solvent. It was discharged from liability on this note on the ground of lack of proper notice. It seems clear that the notice to the university was insufficient. The instructions given were brought to the notary's knowledge, and were to protest the note. Under these instructions, he attempted to give the notices.

It is claimed that the petition merely alleges damages by reason of a failure to follow instructions, and as no instructions were given, except merely to protest the note, there can be no recovery. This ground for supporting the judgment can not be sustained. It is entirely true, as remarked in 2 Daniel on Negotiable Instruments, section 929, the term "protest" includes, in a popular sense, all the steps necessary to fix the liability of a drawer or indorser of negotiable paper. It is so understood currently among commercial men, and the meaning is recognized in *Wood River Bank v. First Nat. Bank of Omaha,* 36 Nebr., 744. It was also recognized by the defendant Parks as having that meaning, and he undertook to follow his instructions in that respect. Plainly, that was what was both meant and understood by this word in the advice with this note.

It is next claimed that the Commercial National Bank of Omaha was plaintiff's agent, and had notice of what had been done, and if the notice was imperfect should have sent a good one. It is true, the certificate of protest showed what was done, but we are unable to find any where in this record when that certificate reached the Omaha Bank or plaintiff, or when it left Lincoln. That it was in the power of plaintiff or his agent to correct this mistake in time to charge the university, is neither pleaded nor proved. Doubtless, as is abundantly shown by defendant's

citations, if no notices had been given to any one but the Omaha bank and it had been so informed at once, it would have been its duty to give notices to the indorsers, and they would have been in time. As to Miles, and apparently Thompson, this was the course pursued. The note had been sent to the First National Bank expressly to charge the university. The latter institution was here, and unless specific information was given that such notice was not served and given in time, so that the Omaha bank could serve it, the harm was done.

It is urged that it is not a part of a notary's official duty to give notice of dishonor of paper intrusted to him. Such is the doctrine of commercial law. In the absence of any statutory change in the law, he is to be deemed, so far as notices are concerned, the mere agent of the holder. *Swayze v. Britton,* 17 Kan., 625. It is to be observed however that the Kansas statute differs materially from ours. In that state his certificate is evidence of protest only; in ours, of notice as well. Code Civil Procedure, sec. 349. In that state his authority is to protest paper. In Nebraska his express authority is to give notice, also. Compiled Statutes, ch. 61, sec. 6. He is allowed an official fee, which was charged in this case. Compiled Statutes, ch. 28, sec. 19. It seems clear that in this state the giving notice of dishonor must be accounted an official duty. It is so held under statutes much less distinctly making it so than ours. *Wheeler v. State,* 9 Heisk. [Tenn.], 393; *Peabody Ins. Co. v. Wilson,* 29 W. Va., 528, 548; *Tevis v. Randall,* 6 Cal., 632; *Hyde v. Planters' Bank,* 17 La. [old series], 563. If this is to be regarded as an official act of the notary, of course, the contention of defendant that he was only a subagent can not be sustained. It would seem that the bank would be liable for due care only in selecting a notary. The remitter, in directing a protest, must be presumed to have known that the corporation to which he was sending his note could not act as a notary, nor could it control the naming of any individual who could. Of course, where he is a mere agent of the holder in giving

notice, it is possible to hold the bank liable for his act. If, however, the act is an official one, it would be absurd to so hold. This distinction seems to be made in *Allen v. Merchants' Bank,* 22 Wend. [N. Y.], 215. In *Wood River Bank v. First Nat. Bank,* 36 Nebr., 744, 745, the opposite rule is sanctioned by this court. *Hyde v. Planters' Bank, supra.*

Finally it is claimed that the indorsement of the university was void *ab initio,* and no damage resulted. No reason is given, and we are cited to *Life & Fire Ins. Co. v. Mechanic Fire Ins. Co.,* 7 Wend. [N. Y.], 31,* and *Marine Bank v. Clements,* 3 Bosw. [N. Y.], 600. The latter case simply holds that one who takes a note payable to an insurance company, indorsed by its president, must show the authority of the president, if his title is questioned. The other case can not be found at the place cited. It does not seem that the authority of the president and secretary to indorse this paper is in issue in this case. An indorsement for value by the university in a certain form is alleged and denied. The introduction of the evidence showing its form was not objected to. It would seem that under the circumstances, authority should be presumed. 4 Thompson, Corporations, sec. 5757, citing *Aiken v. Marine Bank,* 16 Wis., 679; *Goodrich v. Reynolds,* 31 Ill., 490.

It is recommended that the judgment of the district court be reversed and the cause remanded for further proceedings.

DAY and KIRKPATRICK, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

*This was cited as page 131 in the brief.—REPORTER.